UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIANA BEATRIZ GOVEA,<br><br>                                    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                                    Defendant. | Case No.:    3:18-cv-00575 W<br>                     3:15-cr-01880 W<br><br>**ORDER (1) GRANTING GOVERNMENT'S UNOPPOSED MOTION TO SHORTEN TIME [DOC. 71]; (2) DENYING PETITION FOR WRIT OF HABEAS CORPUS [DOC. 64]; AND DENYING CERTIFICATE OF APPEALABILITY** |

Pending before the Court is Adriana Govea's Petition for Writ of Habeas Corpus Pursuant to Title 28 U.S.C. § 2255 (the "Petition"). Respondent United States of America has filed a motion to "shorten time" to file its opposition, along with the opposition.

The Court decides the matter on the papers submitted and without oral argument. See Civil Local Rule 7.1. For the reasons stated below, the Court **GRANTS** Respondent's unopposed motion to shorten time [Doc. 71], **DENIES** the Petition [Doc. 64], and **DENIES** a certificate of appealability.

1

# I.  FACTUAL BACKGROUND

On July 20, 2015, Petitioner Adriana Govea was arraigned on an indictment charging her with (1) conspiracy to import and (2) importation of a controlled substance into the United States in violation of 21 U.S.C. §§ 952, 960, 963.  Petitioner pled not guilty, and the Court appointed Attorney Jerry M. Leahy as her counsel.  (*See Indictment* [Doc. 1]; *July 20, 2015 Min. Entry* [Doc. 4].)

On August 17, 2015, the Court held a hearing to address the Government's motions in limine.  Attorney Leahy asked to postpone the hearing.  (*August 17, 2015 Tr. of Proceedings* [Doc. 56] 4:12–15.)  The Court agreed with respect to the Government's motion to admit Petitioner's cellular text communications, but proceeded with the remaining motions which it considered "uncontroversial."  (*Id.* at 4:19–23.)  The Court then granted the Government's motion for attorney voir dire, motion to preclude certain witnesses, motion to prohibit reference to punishment, motion to admit narcotics, motion to admit expert testimony, and motion for reciprocal discovery.  (*See August 17, 2015 Min. Entry* [Doc. 9].)  The Court also found the Government's motion to preclude duress and necessity defenses was moot because Attorney Leahy stated that he had "no intention of providing that kind of evidence."  (*Id.; August 17, 2015 Tr. of Proceedings* 7–8.)

On October 6, 2015, the Court held a hearing to consider the Government's remaining motion to admit cellular text communications recovered from Petitioner's cell phone pursuant to a search warrant.  (*October 6, 2015 Tr. of Proceedings* [Doc. 57] 2–3.)  The phone was seized from Petitioner upon her arrest.  (*Tr. of Jury Trial – Day One* [Doc. 58] 138:20–21.)  The Court granted the Government's motion over Attorney Leahy's foundational objections and denied his motion for a pre-trial evidentiary hearing related to the text messages.  (*See October 6, 2015 Min. Entry* [Doc. 18].)

On October 7, 2015, voir dire began.  The Court asked each juror to provide basic information (place of residence, occupation, marital status, etc.) and to answer whether any family members had dealings with the criminal justice system, whether the juror was ever a victim of a crime, and whether the juror had friends or relatives in law

enforcement. (*Tr. of Jury Trial – Day One* 11–12.) Government counsel and Attorney Leahy asked follow-up questions. Government counsel exercised six peremptory challenges, the first four of which excluded jurors who disclosed they had a family member who was involved with drugs. (*See, e.g., id.* at 13–15, 74, 82.) Attorney Leahy exercised nine peremptory challenges, including jurors with backgrounds in the military or connections to law enforcement. (*See, e.g., id.* at 12–13, 39–40, 62–68.)

Petitioner's trial commenced that same day. The Government called seven witnesses, starting with Customs and Border Protection Officer Sauget. Officer Sauget testified that on September 26, 2014 while working at the Otay Mesa port of entry, she searched and found twenty-seven packages of methamphetamine marked "Chilango" under the driver and passenger seats of the BMW driven by Petitioner. (*Id.* at 123–40.) In order to access the drugs, officers had to unbolt and remove the seats, and then unbolt a compartment underneath the carpet. (*Id.* at 132–33.) Officer Sauget also testified to seizing Petitioner's two cell phones. (*Id.* at 138–40.) The Government then called Customs and Border Protection Officer Corrales who testified that while working at the San Ysidro port of entry on September 3, 2014—three weeks before Petitioner's arrest—he seized drugs also marked "Chilango" from a vehicle driven by an individual named Monica Gonzalez. (*Id.* at 153–58.)

The Government then called Monica Gonzalez's former roommate, Alicia Rosales, who testified that Gonzalez made arrangements for her to smuggle drugs. (*Tr. of Jury Trial – Day Two* [Doc. 59] 179:9–16.) According to Rosales, she provided her information to Gonzalez to pass along to an "Anna," who arranged for the purchase of a car. Anna told Rosales they would need to pick up the car from "Adriana," but plans changed, and Rosales never met or communicated with "Adriana."[1] (*Id.* at 184:2–6, 186.) Approximately two weeks after Monica Gonzalez was arrested, Rosales was

---

[1] Petitioner's full name is Adriana Beatriz Govea.

arrested attempting to smuggle methamphetamine into the United States. (*Id.* at 178:14–20.) Rosales was released on the condition that she cooperate with the Government, including reaching out to her smuggling contact "Anna." (*Id.* at 196:1–10.)

The Government's next witness established a connection between Rosales and Petitioner. Homeland Security Investigations Special Agent Guerra testified to the content of the text messages recovered from Petitioner's phone. Agent Guerra testified that Petitioner received a text message from her boyfriend "Alan" containing Rosales' information, including name, date of birth, and driver's license number. (*Id.* at 251–52.) Agent Guerra testified that Petitioner then provided that information via text message to a car insurance agent. (*Id.* at 250.) He also testified that Petitioner later sent both Rosales' and Gonzalez' information, along with the dates of their arrests, to a contact named "Attorney Bill" and asked for case information. (*Id.* at 257–61.) On the day of her own arrest, Petitioner again texted Attorney Bill. The message said: "Someone told the boss Alicia talked so he's worries [sic]." (*Id.* at 261.)

Attorney Leahy called Petitioner as the only defense witness. Petitioner testified that she had no knowledge that her boyfriend Alan was involved with drugs. (*Id.* at 285–86.) Petitioner testified that she coordinated the purchase of a vehicle in the United States because Alan did not have a visa to enter. (*Id.* at 274:4–7, 276:13–17.) She also testified that, in the time leading up to her arrest, she grew fearful of Alan and therefore would do what he asked without questioning him. (*Id.* at 274–75, 297.) She testified that on the evening of her arrest, she had borrowed her cousin's BMW and was travelling to Mexico with her youngest child to have a paternity test done at the prompting of Alan's wife. (*Id.* at 290–91.) After arriving, she met with Alan's son-in-law who then borrowed the BMW to pick up Alan's wife. (*Id.* at 311–13.) When he returned, he informed Petitioner the wife was not coming. (*Id.* at 313.) After a couple hours spent with the son-in-law at a restaurant, Petitioner returned to the border to cross back into the United States but was stopped and arrested after drugs were found hidden beneath the seats of

4

the BMW. (*Id.* at 293–96.) Defense rested after Petitioner testified, and closing arguments were delivered the same day. (*Id.* at 333–34.)

On October 9, 2015, the Court read the jury its instructions, and re-read the instructions when Attorney Leahy pointed out that some words had been omitted from the instruction as to the definition of "knowingly." (*Tr. of Jury Trial – Day Three* [Doc. 61] 14–15.) The jury began deliberations and returned guilty verdicts on both counts. (*Id.* at 17–18; see also *Jury Verdicts* [Docs. 22, 23].)

On October 24, 2016, Petitioner was sentenced to two concurrent prison terms of 120 months followed by two concurrent three-year terms of supervised release. (*Minute Entry of Sentencing* [Doc. 49].) The next day, Petitioner filed a notice of appeal of her sentence and conviction. (*See Pet'r's Reply* Ex. A [Doc. 72-1].) The appeal was voluntarily dismissed on April 5, 2017. (*See Pet'r's Reply* Ex. C [Doc. 72-1].)

On March 19, 2018, Petitioner filed the Petition under 28 U.S.C. § 2255. (*See Pet.* [Doc. 64].) On June 13, 2018, the Government filed a motion to "shorten time" to file its opposition, along with the opposition. (*See Mot. to Shorten Time* [Doc. 71]; *Resp't's Opp'n* [Doc. 70].) Petitioner did not file an opposition to the motion to shorten time. On June 28, 2018, Petitioner filed a reply. (*See Pet'r's Reply* [Doc. 72].)[2]

## II.  STANDARD

Petitioner argues that her sentence should be vacated because she was denied effective assistance of counsel. (*Pet.* 1.) To prevail on an ineffective assistance of counsel claim, Petitioner must prove (1) that her attorney's performance was seriously deficient and (2) that Petitioner's defense was prejudiced by the deficient performance. Strickland v. Washington, 466 U.S. 668, 687 (1984).

---

[2] Although Attorney Leahy has failed to cooperate with either party, neither party has sought a court order compelling his cooperation. (*Pet.* 1–4; *Resp't's Opp'n* 2:9–11.)

First, Petitioner must establish deficient performance by proving that her attorney made errors "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. Given the "distorting effects of hindsight," courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

Second, Petitioner must establish prejudice by demonstrating a reasonable probability that—but for her attorney's error—the outcome of her trial would have been different. See id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome," because the "purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation... [but] to ensure that criminal defendants receive a fair trial." Id. at 689, 694.

For claims of cumulative error, "[w]here no single error or omission of counsel, standing alone, significantly impairs the defense, the district court may nonetheless find unfairness and thus, prejudice emanating from the totality of counsel's errors and omissions." Ewing v. Williams, 596 F.2d 391, 396 (9th Cir. 1979); see Sanders v. Ryder, 342 F.3d 991, 1001 (9th Cir. 2003). However, Petitioner still bears the burden of showing prejudice. Strickland, 466 U.S. at 687; Cooper v. Fitzharris, 586 F.2d 1325, 1327 (9th Cir. 1978). Even claims of structural error brought under an ineffective assistance of counsel claim require Petitioner to prove prejudice. See Weaver v. Massachusetts, 137 S. Ct. 1899, 1910–11 (2017).

## III. DISCUSSION

Petitioner's ineffective assistance of counsel claim is based on a laundry list of alleged errors including (1) failing to pursue a plea agreement, (2) inadequately opposing the Government's motions in limine, including its motion to admit Petitioner's text messages, (3) failing to ask follow-up questions on jury voir dire, (4) failing to question a Government witness about "blind mules," (5) failing to expose an incriminating witness's bias, (6) failing to properly prepare Petitioner before testifying, and (7) failing to call

other defense witnesses.  (*See Pet.* 6–25.)  The Government counters that Petitioner did receive effective assistance of counsel and, at best, Petitioner's own untruthfulness disadvantaged Attorney Leahy. (*Resp't's Opp'n* 6.)

### A.    <u>Failing to pursue a plea agreement.</u>

Petitioner faults Attorney Leahy for failing to proactively engage in plea negotiations.  (*See Pet.* 26:1–12.)  But she concedes that Attorney Leahy told her that her story was not believable, that he advised her to meet with the Government and she refused, and that he explained to her that she faced the mandatory minimum sentence if she failed to cooperate or have a credible story—she still refused.  (*See Govea Decl.* ¶¶ 11, 12.)  Under the circumstances, the Court finds that Attorney Leahy's alleged failure to proactively engage in plea negotiations (which Petitioner refused to entertain) does not constitute deficient performance.

### B.    <u>Opposing the Government's motions in limine.</u>

Petitioner argues that Attorney Leahy was ineffective because he failed to oppose the Government's motions in limine at the August 17, 2015 hearing.  During that hearing, Attorney Leahy twice requested a continuance.  (*See August 17, 2015 Tr. of Proceedings* [Doc. 56] 4:12–18; *see also Pl.'s Mot.* [Doc. 5].)  The Court agreed to postpone ruling on the Government's motion in limine to admit text messages but continued with the other motions because they were standard, non-controversial motions. [3]  (*Id.* at 4:19–23.)

---

[3] For example, the Government moved for a limited attorney-conducted voir dire of the jury, which the Court granted and informed Attorney Leahy he was also allowed limited voir dire.  The Government moved to prohibit reference to Petitioner's health, age, finances, education, and potential punishment.  The Court granted the motion as to the potential punishment but stated that the other information could come in as foundation if Petitioner chose to testify.  The Government requested limited character evidence and the Court simply acknowledged that the Federal Rules of Evidence would be enforced as to character evidence.  (*See generally August 17, 2015 Tr. of Proceedings* [Doc. 56].)

Attorney Leahy's decision not to oppose the Government's standard motions in limine does not constitute deficient performance.

Petitioner also argues that Attorney Leahy committed a "critical failure" by not opposing the Government's motion to preclude evidence of duress and necessity, which the Court found to be moot after Attorney Leahy indicated he had no intention of making the requisite pre-trial offer of proof. (*Pet.* 8:25–9:5.) But a duress defense would have required Petitioner to admit knowing the drugs were present and then explaining why she knowingly broke the law. Such testimony was contrary to Petitioner's assertions of innocence and consistent denial of any knowledge of the drugs in her car. (*Govea Decl.* ¶ 11.) Accordingly, Attorney Leahy's decision not to make the pre-trial offer for duress and necessity defenses was not deficient.[4]

The Court addressed the postponed motion to admit Petitioner's text messages on October 6, 2015. (*See October 6, 2015 Tr. of Mot. Hr'g* [Doc. 57]; *see also Pl.'s Mot.* [Doc. 7].) Attorney Leahy opposed the motion.[5] (*See Def.'s Opp'n Mot.* [Doc. 14].) Petitioner contends Attorney Leahy's opposition was "rushed, hastily drafted, and lacked substance." (*Pet.* 9:21–26.) Ironically, Petitioner's argument itself lacks substance. To demonstrate deficient performance, Petitioner must demonstrate that a basis for excluding

---

[4] Petitioner also asserts Attorney Leahy's decision not to make a pre-trial offer of proof prevented her from submitting any evidence of duress at trial. (*Pet.* 9:2–5, 21:14–20.) In reality, it only prevented the jury from receiving instructions as to a duress/necessity defense. See U.S. Courts for the Ninth Circuit, Manual of Model Criminal Jury Instructions for the Ninth Circuit, 6.5 Duress, Coercion, or Compulsion (2010). Attorney Leahy was still able to—and did in fact—elicit testimony from Petitioner about her fear of Alan in an attempt to explain why Petitioner did as he requested without asking questions. (*Tr. of Jury Trial – Day Two* 275:14–17; 297:17–22; 326:22–327:8.) Attorney Leahy's strategy was consistent with Petitioner's claimed lack of knowledge. The Court finds Attorney Leahy's performance in this regard was not deficient.

[5] In addition to filing an opposition to the Government's in limine motion, Attorney Leahy made multiple objections against the admission of the text messages at trial. (*See, e.g., Tr. of Jury Trial – Day One* 166:22–23, 167:22, 170:14; *Tr. of Jury Trial – Day Two* 232–34.) Attorney Leahy also objected to the translation of those messages, requiring the court certified translator who made the translation to testify. (*See id.* at 234:11–23; 236:11–13; 237:6–7.) Attorney Leahy then cross-examined the translator to highlight her use of discretion when making translations. (*See id.* at 240:18–241:1.)

the text messages existed. Petitioner does no such thing, nor—based on the record—is this Court aware of any valid ground that existed for excluding Petitioner's text messages from trial. Additionally, Petitioner would have to show that exclusion of the text messages would have changed the result at trial, despite the substantial evidence supporting the jury's verdict. Petitioner attempts no such showing. For these reasons, the Court finds Petitioner has failed to demonstrate Attorney Leahy's opposition to the Government's motion to admit the text messages was deficient or that her defense was prejudiced by the admission of the text messages.

### C.     **Jury voir dire.**

Petitioner challenges Attorney Leahy's decision during voir dire not to follow up with every potential juror who indicated he or she had a family member involved with illegal drugs. (*Pet.* 15–16.) But Attorney Leahy could reasonably assume that such jurors would be *more* forgiving and sympathetic to Petitioner. Indeed, Government counsel recognized the inference and opined to the jury panel about the need to set aside sympathies. (*See Tr. of Jury Trial – Day One* 31:14–32:14.) The Government further manifested its concerns by using its first four peremptory challenges to excuse jurors who had a close family member involved with illegal drugs. Attorney Leahy behaved reasonably by choosing not to call further attention to those jurors who were more likely to have been sympathetic to his client. The Court, therefore, rejects Petitioner's claim that Attorney Leahy's choices on voir dire constituted deficient performance.

### D.     **Failing to cross examine about "blind mules."**

Petitioner claims Attorney Leahy was deficient by failing to *explicitly* question Officer Sauget about the existence of "blind mules." (*Pet.* 16.) However, as the Government points out, doing so would have opened the door to modus operandi evidence which would have raised even more doubt as to the credibility of Petitioner's version of events. (*Resp't's Opp'n* 9:1–10.) The Government could have responded by

putting on an expert to testify about the rarity of blind mules, the unique circumstances where blind mules may be utilized, and how those circumstances differ from the facts of Petitioner's case.

In light of the potential pitfalls of questioning Officer Sauget about blind mules, Attorney Leahy used his cross-examination to elicit testimony to show how Petitioner may not have known about the drugs. Attorney Leahy sought to establish that the signs of seat tampering that Officer Sauget detected would have been imperceptible to Petitioner when seated in the driver's seat. (*Tr. of Jury Trial – Day One* 140–51.) For these reasons, the Court finds that it was reasonable for Attorney Leahy to avoid asking Officer Sauget general questions about blind mules and, instead, to pursue specific testimony to help legitimize Petitioner's claimed lack of knowledge.

### E.    Failing to cross examine about bias.

Petitioner claims Attorney Leahy did not properly address witness Alicia Rosales' bias during cross-examination. (*Pet.* 16–17.) The record reflects the Government sought to take the sting out of Rosales' potential bias by raising her cooperation with the Government on direct examination. (*Tr. of Jury Trial – Day Two* 191–92.) Nevertheless, Attorney Leahy also raised Rosales' potential bias at the start of cross-examination when he asked why the Government released her without charges after finding a large quantity of methamphetamine in her Jeep. (*Id.* at 196:1–10.) Attorney Leahy then ended cross-examination by eliciting testimony from Rosales that she understood her state-court case would be dismissed and she hoped the trial judge in this case (who would also be her sentencing judge) would grant her a lesser sentence for testifying. (*Id.* at 200–02.) Attorney Leahy then reiterated the point on re-cross twice. (*Id.* at 204–06). For these reasons, Petitioner's claim that Attorney Leahy failed to raise Ms. Rosales' bias on cross-examination lacks merit.

//

//

## F.    **Preparation of Petitioner to testify.**

Petitioner raises several alleged deficiencies related to her trial testimony.  First, she contends she was inadequately prepared to testify because "Attorney Leahy never engaged in any practice questioning" with her.  (*Pet.* 20:7–15, 21:14–16.)  This claim is not supported by the record.

In her declaration, Petitioner admits she met with Attorney Leahy approximately eight times and that, at each meeting, he had her go over her story and told her he was "testing . . . to see whether [she] changed any facts." (*Govea Decl.* ¶¶ 4, 11, 24, 25.) Petitioner also stated that when she testified at trial, she told the same story she had previously given in his office.  (*Id.* ¶ 24.)  The Court finds Attorney Leahy's performance was not deficient.

Next, Petitioner attacks the substance of her own testimony, blaming Attorney Leahy for eliciting her "nonsensical, confused, and inconsistent" story about traveling to Mexico to get a paternity test.[6]  (*Pet.* 22:11–24.)  Petitioner contends that if Attorney Leahy had not elicited that testimony, it would not have been subject to attack by the Government.  (*Id.* 22:11–24.)  Petitioner's blame is misdirected.  She was warned by Attorney Leahy that her story was not believable, yet she chose to proceed to trial. (*Govea Decl.* ¶¶ 11, 16.)  At that trial, Attorney Leahy logically elicited testimony about Petitioner's reasons for entering Mexico and her actions while in Mexico immediately before her arrest at the border.  The fact that the jury did not believe Petitioner's story is not a reflection on Attorney Leahy's competence.

Finally, even assuming for the sake of argument that Attorney Leahy's decision to allow Petitioner to testify was deficient, Petitioner cannot demonstrate prejudice for two

---

[6] Petitioner also blames Attorney Leahy for eliciting her "nonsensical testimony" that a friend borrowed her car while she was eating at a restaurant at the mall.  (*See Pet.* 22:25–28.)  This testimony was, in fact, not elicited by Attorney Leahy but was instead revealed on cross-examination by the Government (*See Tr. of Jury Trial – Day Two* 310–312.)  Petitioner then contradicts herself by criticizing Attorney Leahy for *not* eliciting the borrowed car testimony on direct, referring to it as "the only helpful testimony" she provided.  (*See Pet.* 24:16–25:13.)

reasons. First, based on the strength of the Government's case, Petitioner would have been convicted even had she not testified. The Government's evidence included: (1) incriminating text messages which tied Petitioner to Alicia Rosales and Monica Gonzalez—the two women arrested for smuggling drugs in the weeks leading up to Petitioner's arrest; (2) Alicia Rosales' testimony that she was told by her smuggling contact to pick up a vehicle from "Adriana"; (3) testimony that the drugs found in Alicia Rosales' vehicle bore the same "Chilango" marking as the drugs found in Petitioner's vehicle; and (4) the location of the drugs in the BMW, which could only be reached by unbolting and removing the seats.

Second, Petitioner's testimony offered no new, meaningful inculpatory evidence. The Government had already introduced testimony of Petitioner's "nonsensical" story through Officer Sauget, who testified that at the border crossing, Petitioner stated she was driving her cousin's car and that she had travelled to Mexico for an DNA test for her child scheduled for eight o'clock in the evening. (*See Tr. of Jury Trial – Day One* 128:13–23.) If anything, Petitioner's testimony strengthened her case by allowing her to provide a back story as to why she had sent the text messages, how she ended up driving the BMW, and why she was in Mexico. (*Tr. of Jury Trial – Day Two* 271–305.)[7]

### G. Lack of defense witnesses.

Petitioner contends that Attorney Leahy should have introduced evidence at trial that Peralta—Petitioner's cousin and owner of the car in which she was arrested—had

---

[7] In a single sentence, Petitioner states that Attorney Leahy failed to inform her that it was her decision whether or not to testify. (*Pet.* 20:11–14; *Govea Decl.* ¶ 16.) Assuming for the sake of argument this assertion is true *and* constitutes structural error, Petitioner must still demonstrate prejudice. See Weaver v. Massachusetts, 137 S. Ct. 1899, 1910–11 (2017) (finding that when structural error is raised in the context of an ineffective assistance of counsel claim, the defendant is required to show prejudice). The Court finds Petitioner could not demonstrate prejudice because of the strength of the Government's case and because her "nonsensical" story had already come in to evidence through Officer Sauget's testimony.

previously used that vehicle to smuggle drugs. (*Pet.* 23:25–24:6.) But Attorney Leahy's justification for omitting this evidence is clear—Peralta admitted that Petitioner arranged for her to smuggle drugs from Tijuana into the United States on more than one occasion. (*See Pet.* Ex. I.) Attorney Leahy's decision not to call Peralta to testify does not support Petitioner's ineffective assistance of counsel claim.

Aside from Peralta, Petitioner has failed to identify any other witnesses that would have assisted her defense, particularly given the substantial evidence supporting the jury's guilty verdict. Therefore, Petitioner has failed to meet her burden in establishing prejudice on this claim.

### H. Totality of the alleged errors.

For the reasons discussed above, the Court finds that Petitioner has failed to demonstrate that any aspect of Attorney Leahy's performance fell outside the wide range of professionally competent assistance. Strickland v. Washington, 466 U.S. 668, 690 (1984). Thus, the Court need not address the cumulative effect of the claimed errors.

## IV. CONCLUSION & ORDER

For the reasons stated above, the Court **DENIES** the Petition [Doc. 64]. And because reasonable jurists would not find the Court's assessment of the claims debatable or wrong, the Court **DENIES** a certificate of appealability. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). The Clerk of the Court shall close the district court file.

**IT IS SO ORDERED.**

Dated: April 4, 2019

_____
Hon. Thomas J. Whelan
United States District Judge

3:18-cv-00575 W
3:15-cr-01880 W